IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER LEE PRICE, | : | |
| Plaintiff, | : | |
| vs. | : | CA 14-0472-KD-C |
| KIM THOMAS, COMMISSIONER, ALABAMA DEPARTMENT OF CORRECTIONS, in his official capacity,[1] et al., | : : | |
| | : | |
| Defendants. | | |

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1), the defendants' motion to dismiss (Doc. 10), plaintiff's response in opposition (Doc. 12), the moving parties' reply (Doc. 13), and plaintiff's notice of supplemental authority (Doc. 14). Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **DENY** the defendants' motion to dismiss (Doc. 10).

---

[1] Kim Thomas resigned as the Commissioner of the Alabama Department of Corrections ("ADOC") on or about January 27, 2015. *See* http://www.al.com/news/index.ssf/2015/01/alabama_prison_conditions (last visited February 9, 2015). Ultimately, Air Force Colonel Jefferson Dunn will take over as the Commissioner of the ADOC when he retires from the Air Force in March, *see id.*; in the interim, William G. Sharp, Jr. was appointed Interim Commissioner of the ADOC in January of 2015. *See* http://governor.alabama.gov/cabinet/department-of-corrections (last visited February 9, 2015). Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Sharp should be substituted for Kim Thomas as the proper lead defendant in this action, *see* FED.R.CIV.P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending."), to be followed by the substitution of Dunn for Sharp once Dunn officially assumes the position of Commissioner of the Alabama Department of Corrections, *see id.* ("The officer's successor is automatically substituted as a party.").

## FINDINGS OF FACT

When Christopher Lee Price was a senior in high school, "he participated in a burglary[2] during which the homeowner, William Lynn, was killed." (Doc. 1, ¶ 15.) Price was convicted of capital murder and received a death sentence (*see id.*); he is a "death row inmate" housed at Holman Correctional Facility in Atmore, Alabama (*see id.* at ¶¶ 1 & 9).[3] "On September 11, 2014, the State [of Alabama] asked the Alabama Supreme Court to set an execution date" for the plaintiff (Doc. 1, at ¶ 16), one day after the then Commissioner of the Department of Corrections, Kim Thomas, "unilaterally decided to adopt" an "untested three-drug [lethal injection] protocol[.]" (*Id.* at ¶ 12.)[4] According to plaintiff, "the new three-drug protocol that the State now intends to use on [him] materially differs from the lethal injection protocols that Alabama has used on all previous inmates[,]" thereby making his "constitutional claims under 42 U.S.C. § 1983 . . . timely." (*Id.* at ¶ 14.) The primary relief sought by Price is an order from this Court

---

[2] In truth, Price participated in the first-degree robbery of Lynn's home during which Lynn was killed. *Price v. State, infra,* 725 So.2d at 1011.

[3] The procedural course of Price's conviction has been well-explained in detail by the defendants. (*See* Doc. 10, at 8.) Price's conviction and sentence were affirmed on direct appeal, *Price v. State,* 725 So.2d 1003 (Ala.Crim.App. 1997), *aff'd,* 725 So.2d 1063 (Ala. 1998); his conviction and sentence became final when the United States Supreme Court denied his petition for writ of certiorari, *Price v. Alabama,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999). The Circuit Court of Fayette County, Alabama summarily dismissed Price's Rule 32 collateral attack on his conviction and sentence; "the Alabama Court of Criminal Appeals affirmed the dismissal in an unpublished decision[,] . . . [and t]he Alabama Supreme Court denied certiorari review." (Doc. 10, at 8.) Price then filed a federal habeas petition, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Alabama. (*Id.*) "After briefing, the district court issued a memorandum opinion and final judgment denying Price's petition with prejudice[.]" (*Id.*) The Eleventh Circuit Court of Appeals affirmed the district court's decision, *Price v. Allen,* 679 F.3d 1315 (2012) and the United States Supreme Court denied Price's petition for writ of certiorari on March 4, 2013, *Price v. Thomas,* ___ U.S. ___, 133 S.Ct. 1493, 185 L.Ed.2d 548 (2013).

[4] "Alabama abandoned the use of the electric chair in favor of lethal injection[]" in 2002. (*Id.* at ¶ 17.)

2

enjoining the defendants from executing him using the protocol the State adopted on September 10, 2014 and declaring that the defendants' new lethal injection execution protocol violates his Eighth Amendment right to be free from cruel and unusual punishment. (*See id.* at ¶ 55 a. & c.)

      49.    The State of Alabama has announced the intention to execute Mr. Price using a new three-drug protocol consisting of (a) 500 milligrams of midazolam hydrochloride,[5] (b) 600 milligrams of rocuronium bromide, and (c) 240 milliequivalents of potassium chloride.

      50.    Defendants are acting under the color of Alabama law in undertaking to execute Mr. Price using the DOC's new three-drug protocol.

      51.    It is substantially likely that midazolam hydrochloride will fail to render Mr. Price unconscious and insensate during the remainder of the execution, and that Mr. Price will therefore experience prolonged, excruciating, and needless pain while the rocuronium bromide forcibly

---

[5] "[T]he 'first drug' in every three-drug [lethal injection] protocol [utilized in the United States] is intended not to kill the inmate, but rather to render the inmate unconscious and insensate. [] From 2002 through 2013, the Alabama DOC used either sodium thiopental or pentobarbital to render the inmate unconscious and insensate prior to the administration of potassium chloride." (*Id.* at ¶¶ 21 & 22.)

suffocates him[6] and the potassium chloride burns his veins and internal organs and stops his heart[7].

52.     Defendants are acting knowingly and with deliberate indifference.

53.     The violation of Mr. Price's constitutional rights is exacerbated by (a) the risk that the State of Alabama will use compounded drugs or other drugs from non-FDA approved sources, and (b) the secret process through which the Alabama DOC adopts and implements its lethal injection protocol, and (c) the inadequacy of whatever "consciousness checks" the Alabama DOC intends to perform prior to administering the rocuronium bromide and potassium chloride.

54.     If Alabama's recently adopted protocol is used to execute Mr. Price, Mr. Price will be subject to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

(*Id.* at ¶¶49-54 (footnotes added).) Plaintiff bases his allegation that midazolam hydrochloride[8] will fail to render him unconscious and insensate during the remainder

---

[6] "[Rocuronium bromide] does not affect consciousness or the perception of pain. Instead, it causes paralysis of the muscles, including the diaphragm. If an individual who is not fully unconscious and insensate is given the drug, the individual will feel as though he is being forcibly suffocated. The individual's suffering, however, is invisible to observers because the total body paralysis prevents the individual from crying out in pain." (*Id.* at ¶ 19; *see also id.* at ¶¶ 35-36 ("Midazolam hydrochloride is a benzodiazepine. Its FDA approved uses include sedation, anxiolysis (relief of fear and anxiety), and amnesia (including loss of memory). Midazolam hydrochloride can also depress respiration when administered in sufficient doses. [] Unlike sodium thiopental and pentobarbital, midazolam hydrochloride is not a barbiturate. It is not generally administered to suppress responses to noxious stimuli and does not act as an analgesic. The sedative properties of midazolam hydrochloride do not suppress responses to noxious stimuli. A person who is sedated can still experience stimuli, including painful stimuli. The amnesia-inducing properties of midazolam hydrochloride may prevent a person from *remembering* the pain and suffering he experienced while under the effects of the drug. However, even if the individual suffers from a lack of memory *after* the fact, the individual is absolutely experiencing pain and suffering *during* the fact. Unlike sodium thiopental, even at high does[] midazolam hydrochloride will not induce a state of anesthesia sufficiently deep to prevent an individual from perceiving and feeling the pain and suffering associated with rocuronium bromide and potassium chloride." (emphasis in original)).)

[7] "Medical experts and law enforcement authorities agree that, unless the inmate is completely unconscious and insensate, the administration of potassium chloride will cause the inmate prolonged pain, including an excruciating burning sensation throughout the entire body[.]" (*Id.* at ¶ 18.)

of the execution not only on the properties of the drug itself (*compare id.* at ¶ 24 ("Midazolam hydrochloride is a sedative that is not generally used clinically as a stand-alone general anesthetic. Midazolam hydrochloride is not an analgesic and does not suppress responses to noxious stimuli. Unlike sodium thiopental, midazolam hydrochloride will not induce general anesthesia sufficient to prevent an individual from perceiving and feeling pain from noxious stimuli such as rocuronium bromide and potassium chloride, even at high doses.") *with id.* at ¶ 29 ("[E]ven where a large dose of midazolam hydrochloride induces a state of anesthesia in an inmate, it is not a *deep* state of anesthesia, and the rocuronium bromide and potassium chloride are substantially likely to cause pain and suffering that will 'break through' the midazolam hydrochloride.")) but, as well, on the details of a series of "botched" executions across the country that unsuccessfully attempted to utilize midazolam hydrochloride to render executed inmates unconscious and insensate (*id.* at ¶¶ 26, 38 & 40-42). According to plaintiff, because midazolam hydrochloride will not render him unconscious and insensate, he will experience physical pain and suffering despite the amnesia-inducing properties of the drug and his inability to audibly or visibly express pain due to administration of the paralytic agent rocuronium bromide. (*Compare id.* at ¶ 19 ("[Rocuronium bromide] causes paralysis of the muscles, including the diaphragm. If an individual who is not fully unconscious and insensate is given the drug, the individual will feel as though he is being forcibly suffocated. The individual's suffering, however, is invisible to observers because the total body paralysis prevents the

---

[8] Plaintiff alleges that the Commissioner's decision to utilize midazolam hydrochloride as part of its lethal-injection protocol stems from "the fact that sodium thiopental, pentobarbital, and all other similar general anesthetics are presently unavailable to the Alabama DOC for use in executions." (*Id.* at ¶ 25 (citation omitted).)

5

individual from crying out in pain.") *with id.* at ¶ 32 ("The Constitution does not allow a state to subject a death row inmate to prolonged and excruciating pain and suffering, regardless of whether the state takes steps to ensure that the inmate's pain is invisible to third-party observers.").).

Price filed his § 1983 complaint in this Court on October 8, 2014 (Doc. 1, at 1), less than one month after the defendant Commissioner of the Alabama Department of Corrections ("DOC") amended the Department's lethal injection protocol (*compare id.* *with id.* at ¶ 23).

## CONCLUSIONS OF LAW

A.  **Motion to Dismiss Standard**.

A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic

recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer

enough factual content to 'raise a right to belief above the speculative level.'");
*Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." (internal citations and quotation marks omitted)), *abrogated on other grounds as stated in Mohamad v. Palestinian Auth.,* ___ U.S. ___, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

  **B.** **<u>Whether Plaintiff's Claim is Time-Barred</u>**.  It is clear in the Eleventh Circuit that "'a method of execution claim accrues on the later of the date on which state review is complete, or the date on which the capital litigant becomes subject to a new or substantially changed execution protocol.'" *Mann v. Palmer,* 713 F.3d 1306, 1312 (11th Cir.) (quoting *McNair v. Allen,* 515 F.3d 1168, 1174 (11th Cir. 2008)), *cert. denied,* ___ U.S. ___, 133 S.Ct. 1752, 185 L.Ed.2d 806 (2013). Here, Price's state review was complete on May 24, 1999, the date upon which the United States Supreme Court denied his petition for writ of certiorari to the Alabama Supreme Court on direct appeal of the entry of his death sentence. *See Price v. Alabama,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999). At that time, of course, the method of execution of death row prisoners was by means of the electric chair. (*See* Doc. 1, at ¶ 17.)

  In 2002 (*id.*), specifically on July 31, 2002 (Doc. 10, at 12), Alabama changed its method of execution to lethal injection (*compare id. with* Doc. 1, at ¶ 17) and, therefore, it is the defendants' position that Price's statute of limitations began to run on July 31, 2002 and expired two years later on July 21, 2004 (*see* Doc. 10, at 12). *See Jones v. Preuit &*

8

*Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) ("[T]he two-year limitations period . . . applies to section 1983 actions in Alabama."); *see also McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir.) ("All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought. . . . [Plaintiff's] claim was brought in Alabama, where the governing limitations period is two years. . . . Therefore, in order to have his claim heard, [plaintiff] was required to bring it within two years from the date the limitations period began to run."), *cert. denied sub nom. Callahan v. Allen*, 553 U.S. 1098, 128 S.Ct. 2914, 171 L.Ed.2d 850 (2008). And the defendants' position in this regard would be well-taken unless Price can establish that "he filed his § 1983 complaint within two years of a significant change in Alabama's method of administering lethal injections." *Arthur v. Thomas*, 674 F.3d 1257, 1259 (11th Cir. 2012), citing *McNair, supra,* 515 F.3d at 1177.

Here, of course, Price alleges a significant change in Alabama's method of administering lethal injections when it (through its Commissioner of the Department of Corrections) substituted midazolam hydrochloride as the first drug in Alabama's three-drug lethal injection protocol on September 10, 2014. (*See* Doc. 1, at ¶ 23.)[9] Of particular import, plaintiff alleges that midazolam hydrochloride is not a barbiturate like its predecessors sodium thiopental and pentobarbital (rather, it is a benzodiazepine); it is a sedative as opposed to a general anesthetic; and, as a result, it will not necessarily render him unconscious and insensate by the time the other two drugs (rocuronium bromide and potassium chloride) act to suffocate and burn his veins and internal

---

[9] Plaintiff's complaint was filed on October 8, 2014 (Doc. 1, at 1) and, of course, is properly considered timely filed if the substitution of midazolam hydrochloride for pentobarbital (or sodium thiopental) is considered a significant change in Alabama's method of execution by lethal injection.

organs, as evidenced by several "botched" executions throughout the country. (*See* Doc. 1.) Based upon the foregoing, Price contends that this Court should allow factual development of whether the change/switch from pentobarbital to midazolam hydrochloride is significant (*see* Doc. 12, at 9-15). *See Arthur, supra*, 674 F.3d at 1260 ("Whether a significant change has occurred in a state's method of execution is a fact-dependent inquiry, which we have treated as such in each of our recent cases addressing the lethal injection protocols of Alabama, Georgia and Florida. Although we concluded in *Powell v. Thomas,* 643 F.3d 1300 (11th Cir. 2011), *DeYoung v. Owens,* 646 F.3d 1319 (11th Cir. 2011) and *Valle v. Singer*, 655 F.3d 1223, 1226 (11th Cir. 2011), that the replacement of sodium thiopental with pentobarbital did not constitute a 'significant change' in the lethal injection execution protocol, each of these decisions is premised on the specific factual allegations and/or evidence presented and *considered* in each of those cases. None of the previous courts that were asked to decide whether the substitution of pentobarbital for sodium thiopental is a 'significant change' in the lethal injection protocol could have resolved, nor did they resolve, that claim without considering the facts and evidence. Simply because no court, based on the allegations and evidence that has been presented in cases to date, has found a significant change does not mean that such evidence does not exist. To read our circuit decisions in *Powell*, *DeYoung,* and *Valle* as holding—no matter what new facts allege or new evidence reveals—that Alabama's, Georgia's and Florida's substitutions of pentobarbital for sodium thiopental is not a significant change in their execution protocols is to ignore the reality that scientific and medical evidence that exists today may differ from that which new scientific and medical discoveries and research reveal tomorrow.").

    For their part, of course, the defendants argue that the holding in *Arthur* was narrow, as recognized in *Mann, supra*, and, therefore, urge the Court to find that

10

plaintiff is not entitled to factual development and an evidentiary hearing to determine whether the substitution of midazolam hydrochloride for pentobarbital is a substantial change in Alabama's method of execution by lethal injection (*see, e.g.,* Doc. 13, at 3-11). To be sure, the Eleventh Circuit in *Mann* observed that "*Arthur* did not hold, nor could it have, that every inmate who files a complaint that challenges the use of pentobarbital is entitled to an evidentiary hearing to determine whether the substitution of pentobarbital is a substantial change in the method of execution." 713 F.3d at 1314; *see also id.* ("We had already foreclosed that argument in *Powell*, where we had held that an inmate's complaint was governed by our prior panel precedent that the substitution of pentobarbital for sodium pentothal did not constitute a significant change for the purpose of the statute of limitations."). Important to this observation, is the panel's recognition that "if the allegations or evidence in *Arthur* had been materially the same as those presented in *Powell*, the district court would have been obliged to dismiss Arthur's complaint as untimely." *Id.* at 1313-1314 (citations omitted).

The undersigned, however, cannot agree with the defendants statute of limitations argument and, instead, **RECOMMENDS** that the Court allow factual development and thereafter conduct an evidentiary hearing to determine whether the substitution of midazolam hydrochloride for pentobarbital (or sodium thiopental) is a substantial change in Alabama's method of execution. This conclusion is reached not only because the focus of *Mann* (and the focus of *Arthur, Powell, Valle,* and *DeYoung*) was on the substitution of one barbiturate (pentobarbital) for another barbiturate (sodium pentothal) or because the Eleventh Circuit, to date, has not specifically determined that the substitution of midazolam hydrochloride for pentobarbital does not

11

constitute a significant change for the purpose of the statute of limitations.[10] Although these are sufficient reasons, standing alone, to reject the defendants' statute of limitations argument, the "clincher" is that every court in the Eleventh Circuit to have considered the question of whether the substitution of midazolam hydrochloride for pentobarbital constitutes a significant change in the method of execution by lethal injection did so only after at least a modicum of factual development and an evidentiary hearing conducted by a court. *Compare Chavez v. Palmer,* 2014 WL 521067, *7-8 (M.D. Fla. Feb. 10, 2014) (evidentiary hearing conducted which allowed expert witness testimony) *with Muhammad v. Crews,* 2013 WL 6844489, *2 (M.D. Fla. Dec. 27, 2013) (evidentiary hearing conducted over the course of two days, on November 21 and 22, 2013, by the state circuit court). The cautionary comment in *Arthur v. Thomas, supra,* that "relying on

---

[10] As correctly observed by the Middle District of Alabama in *Arthur v. Thomas,* Case No. 2:11-cv-438-WKW (M.D. Ala. Jan. 5, 2015) (unpublished opinion), "*Muhammad* [*v. Secretary, Florida Dept. of Corrections*, 739 F.3d 683 (11th Cir. 2014)] affirmed the dismissal of the plaintiff's Eighth Amendment claim on res judicata grounds, as the Florida Supreme Court had already held the use of midazolam did not create a substantial risk of serious harm, and *Chavez* dealt with the merits of the plaintiff's Eighth Amendment claim on review of a denial of a motion to stay executions[]" (Doc. 12, Exhibit A, at 9 n.3). *Compare Chavez v. Florida SP Warden,* 742 F.3d 1267, 1273 (11th Cir.) ("[T]he district court did not abuse its discretion in finding that Chavez failed to demonstrate a substantial likelihood of success on the merits."), *cert. denied,* 134 S.Ct. 1156 (2014), *with Muhammad v. Secretary*, *Florida Dept. of Corrections,* 739 F.3d 683, 688 & 689 (11th Cir.) ("The district court did not abuse its discretion when it denied the motion to stay the execution and the amended motion to stay the execution, nor will we grant the application for a stay of execution filed in our Court. Muhammad cannot establish that he has a substantial likelihood of success on the merits. The Supreme Court of Florida has already decided his Eighth Amendment claim . . ., and res judicata bars his federal complaint. . . . Because res judicata bars Muhammad from relitigating these claims in his federal complaint, Muhammad has failed to establish a substantial likelihood that can succeed on the merits. The district court did not err when it denied Muhammad's motions to stay the executions, and we refuse to grant his application in our Court. Federal review of Muhammad's Eighth Amendment claim, already decided by the Supreme Court of Florida, is available in the Supreme Court of the United States, in which his petition for a writ of certiorari is pending."), *cert. denied,* 134 S.Ct. 894 (2014). Indeed, in *Chavez* the Eleventh Circuit specifically stated that it had no need to address, nor was it implying any view about, the State's defenses, including the defense "based on the statute of limitations[.]" 742 F.3d at 1273 n.5. Thus, the Eleventh Circuit has made no implicit or explicit statement regarding whether the substitution of midazolam hydrochloride for pentobarbital constitutes, or does not constitute, a significant change in Alabama's method of execution for purposes of the statute of limitations.

evidence presented in other cases without factual development and the opportunity to present potentially new scientific or medical evidence with respect to the use of midazolam in the context of Alabama's lethal injection protocol is precisely what the Circuit cautioned against in *Arthur,* 674 F.3d 1257 (11th Cir. 2012)[]" (Doc. 12, Exhibit A, at 9 n.3) is particularly relevant where, as here, the "botched" executions that occurred in Arizona, Ohio, and Oklahoma involving midazolam hydrochloride and referenced in the complaint (*see* Doc. 1, ¶¶ 38, 40 & 41 (botched executions occurred in April of 2014, on August 8, 2014, and on September 18, 2014)) all occurred after the district and Eleventh Circuit decisions in *Chavez* and *Muhammad, supra, see, e.g., Chavez,* 742 F.3d 1267 (11th Cir. Feb. 12, 2014); *Muhammad,* 739 F.3d 684 (11th Cir. Jan. 7, 2014). Accordingly, the Magistrate Judge **RECOMMENDS** that the Court **DECLINE** to find Price's Eighth Amendment claim barred by the applicable statute of limitations in absence of an opportunity for factual development, including discovery between the parties, and an evidentiary hearing.

      C.      <u>**Whether Price has Stated a Plausible Eighth Amendment Claim.**</u>  As recently reiterated by the Eleventh Circuit, "to prevail on an Eighth Amendment challenge to a lethal injection protocol, a condemned inmate must establish 'an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment.'" *Chavez,* 742 F.3d at 1272, quoting *Baze v. Rees,* 553 U.S. 35, 50, 128 S.Ct. 1520, 1531, 170 L.Ed.2d 420 (2008).  "To demonstrate that, an inmate must show two things: (1) the lethal injection protocol in question creates 'a substantial risk of serious harm,' and (2) there are 'known and available alternatives' that are 'feasible, readily implemented,' and that will 'in fact significantly reduce [the] substantial risk of severe pain.'" *Id.* at 1272, quoting *Baze, supra,* 553 U.S. at 50, 52 & 61, 128 S.Ct. at 1531-1532 & 1537.

13

Here, the defendants contend that plaintiff's complaint satisfies neither prong set forth by the Supreme Court in *Baze* (*compare* Doc. 10, at 18-25 *with* Doc. 13, at 11-16), as they did in *Arthur v. Thomas, supra* (*see* Doc. 12, Exhibit A, at 10-11). To avoid a split in the district courts of Alabama, the undersigned **RECOMMENDS** that the Court **ADOPT** the reasoning of District Judge W. Keith Watkins from the Middle District of Alabama and **REJECT** the defendants' arguments that Price has failed to sufficiently plead that the use of midazolam hydrochloride is surely or very likely to cause a risk of severe pain and that he has failed to plead a known and available alternative drug to midazolam hydrochloride.

> In support of th[e] argument [that plaintiff has failed on the first prong], the State points to cases that have recognized that a properly injected 500-milligram dose of midazolam will effectively render an inmate unconscious prior to the administration of the second and third drugs in a three-drug protocol like Alabama's. *See Muhammad v. Crews*, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489, at *1 (M.D. Fla. Dec. 27, 2013); *Chavez v. Palmer*, No. 3:14-cv-110-J-39JBT, 2014 WL 521067, at *1 (M.D. Fla. Feb. 10, 2014); *Howell v. State*, 133 So.2d 511 (Fla. 2014); *Henry v. State*, 134 So.3d 938 (Fla. 2014); and *Muhammad v. State*, 132 So.2d 176 (Fla. 2013).[11] However, all of these cases, while addressing the efficacy of midazolam in the lethal-injection context, did so only after an evidentiary hearing. In this case, there is no evidence concerning whether the use of midazolam as the first drug in Alabama's three-drug protocol will surely or very likely cause serious illness and needless suffering to [the plaintiff]. All that is before the court are [plaintiff's] allegations that midazolam will have such an effect. Thus, without allowing [plaintiff] to . . . conduct discovery on the efficacy of midazolam in the lethal-injection context, this court cannot summarily dismiss his Eighth Amendment claim for failure to state a claim under Rule 12(b)(6).
>
> The court is also not persuaded by the [defendants'] argument that [plaintiff] failed to plead a known and available alternative drug to midazolam as required by *Baze* . . . . First, the court does not accept the State's argument that this is a specific pleading requirement set forth by *Baze* that must be properly alleged before a case can survive a motion to dismiss.

---

[11] These are the very same cases to which the defendants cite in this case. (Doc. 10, at 20.)

(Doc. 12, Exhibit A, at 10-11.) Indeed, nowhere in *Baze* is there the faintest of suggestions that a plaintiff is required to plead a known and available alternative, *see* 553 U.S. at 50-62, 128 S.Ct. at 1531-1538, and, moreover, such contention by the defendants is arguably foreclosed by *Hill v. McDonough,* 547 U.S. 573, 582, 126 S.Ct. 2096, 2103, 165 L.Ed.2d 44 (2006) ("The United States as *amicus curiae* contends that a capital litigant's § 1983 action can proceed if . . . the prisoner identifies an alternative, authorized method of execution. . . . Although we agree courts should not tolerate abusive litigation tactics . . ., even if the United States' proposed limitation were likely to be effective we could not accept it. It is true that the *Nelson* plaintiff's affirmative identification of an acceptable alternative supported our conclusion that the suit need not proceed as a habeas action. . . . That fact, however, was not decisive. *Nelson* did not change the traditional pleading requirements for § 1983 actions. If the relief sought would foreclose execution, recharacterizing a complaint as an action for habeas corpus might be proper. . . . Imposition of heightened pleading requirements, however, is quite a different matter. Specific pleading requirements are mandated by the Federal Rules of Civil Procedure, and not, as a general rule, through case-by-case determinations of the federal courts."). However, even if *Baze* does require a plaintiff to plead a known and available alternative to midazolam hydrochloride, and the Court determines plaintiff has not satisfied this pleading requirement, plaintiff should be allowed to amend his complaint in order to remedy such defect. *See* FED.R.CIV.P. 15(a)(2) ("[A] party may amend its pleading only with the opposing party's written consent or the court's leave. The court should *freely give leave when justice so requires*." (emphasis supplied)).

In light of the foregoing, the undersigned **RECOMMENDS** that the Court **DECLINE** to summarily dismiss Price's complaint pursuant to Rule 12(b)(6).

D.   **Whether Price is Precluded from Relief Based on his Alleged Inequitable and Unreasonable Delay in Seeking Relief under § 1983 and Because the Complaint is a Challenge to His Sentence Itself**.  The defendants' final argument is that Price's complaint "should be dismissed on equitable principles because he unreasonably delayed in filing his § 1983 action even though his execution has been imminent for some time[]" (Doc. 10, at 25; *see also id.* at 25-30) and because "the relief he seeks would necessarily bar his execution[]" (Doc. 13, at 16).

In support of their "equitable principles" argument, the defendants contend that Price's execution has been imminent since at least March 4, 2013 and, therefore, the plaintiff unreasonably delayed in filing his complaint on October 8, 2014. (Doc. 10, at 28.) The undersigned **RECOMMENDS** that the Court find the defendants' argument unavailing because this lawsuit was initiated on October 8, 2014 (Doc. 1, at 1) solely because of the ADOC Commissioner's unilateral amendment of the DOC's multi-drug protocol to substitute midazolam hydrochloride for pentobarbital (or sodium thiopental) on *September 10, 2014* (Doc. 1, at ¶ 23); thus, there was no unreasonable delay by Price in filing his complaint. Moreover, the undersigned agrees with plaintiff that "[a]s a matter of basic logic (not to mention fairness), [his] . . . lawsuit challenging the State's new lethal injection protocol cannot be dismissed on the 'equitable' ground that he did not also bring lawsuits against the State's old lethal injection protocols." (Doc. 12, at 18.)[12]

---

[12]   Had Price filed a lawsuit on September 9, 2014 challenging Alabama's lethal injection protocol that utilized pentobarbital, the defendants' equitable argument would have been persuasive; however, that argument is rendered unpersuasive by the announced substitution of midazolam hydrochloride for pentobarbital on September 10, 2014, particularly in light of the fact that no court in Alabama (nor, for that matter, the Eleventh Circuit) has specifically determined (following discovery and an evidentiary hearing) that the substitution
(Continued)

16

The defendants' alternative argument, that Price's complaint is nothing more than a challenge to his sentence "because the relief he seeks would necessarily bar his execution[]" (Doc. 13, at 16), should also be **REJECTED.** Granting the relief requested by Price, that is, enjoining the defendants from executing him using the protocol adopted on September 10, 2014 and declaring that protocol violative of his right to be free from cruel and unusual punishment under the Eighth Amendment (Doc. 1, at 18 & 19), would not forever bar his execution. Rather, "[i]t would simply bar the [defendants] from executing [him] in a constitutionally violate manner. This sounds in § 1983[.]" (Doc. 12, Exhibit A, at 6.) Such a finding by this Court would be in accord with *Hill v. McDonough, supra,* 547 U.S. at 580, 126 S.Ct. at 2102 ("In the case before us we conclude that Hill's § 1983 action is controlled by the holding in *Nelson*. Here, as in *Nelson*, Hill's action if successful ***would not necessarily prevent the State from executing him by lethal injection***. The complaint does not challenge the lethal injection sentence as a general matter but seeks instead only to enjoin respondents 'from executing [Hill] in the manner they currently intend.'" (emphasis supplied)); *see also id.* at 583, 126 S.Ct. at 2104 ("Any incidental delay caused by allowing Hill to file suit does not cast on his sentence the kind of negative legal implication that would require him to proceed in a habeas action."). Therefore, the defendants' equitable arguments in favor of dismissal necessarily fail.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that the defendants' motion to dismiss (Doc. 10) be **DENIED.**

---

of midazolam hydrochloride for pentobarbital does not constitute a significant change in Alabama's method of execution by lethal injection.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit precedent, "the failure to object limits the scope of [] appellate review to plain error review of the magistrate judge's *factual findings.*" *Dupree v. Warden*, 715 F.3d 1295, 1300 (11th Cir. 2013) (emphasis in original). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 24th day of February, 2014.

                s/WILLIAM E. CASSADY
                **UNITED STATES MAGISTRATE JUDGE**