**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

CHRISTOPHER LEE PRICE,       :

     Plaintiff,              :

vs.                       :     CA 14-0472-KD-C

JEFFERSON S. DUNN,       :
COMMISSIONER, ALABAMA
DEPARTMENT OF CORRECTIONS, in :
his official capacity,[1] et al.,

                              :

     Defendants.

## REPORT AND RECOMMENDATION

     This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the amended complaint (Doc. 32), the defendants' motion to dismiss amended complaint (Doc. 35), plaintiff's response in opposition (Doc. 37), and the moving parties' reply (Doc. 38). Upon consideration of the foregoing pleadings, as well as all other relevant pleadings in this case, of which there are a number, the Magistrate Judge recommends that the Court **DENY** the defendants' motion to dismiss amended complaint (Doc. 35).

---

[1]     Jefferson S. Dunn took the oath of office as Commissioner of the Alabama Department of Corrections on April 1, 2015. *See* http://doc.alabama.gov/NewsRelease.aspx?article=Commission. . . (last visited October 8, 2015). Accordingly, Dunn is automatically substituted for William G. Sharp, Jr., named Interim Commissioner of the ADOC in January of 2015, as the proper lead defendant in this action. *See* Fed.R.Civ.P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

## RELEVANT BACKGROUND

This action has been pending since October 8, 2014, when Price filed his Eighth

and Fourteenth Amendment challenge to Alabama's three-drug lethal injection

protocol. (Doc. 1.) The defendants quickly sought dismissal of plaintiff's complaint.

(Doc. 10.) Following briefing, however, the undersigned recommended that the Court

"**DECLINE** to find Price's Eighth Amendment claim barred by the applicable statute of

limitations in absence of an opportunity for factual development, including discovery

between the parties, and an evidentiary hearing[,]" (Doc. 15, at 13);[2] that the Court find

that Price had stated a plausible Eight Amendment claim or that the Court allow

plaintiff to freely amend his complaint to state an Eighth Amendment claim (*id.* at 13-

15);[3] and that the Court reject the defendants' "equitable" argument (*id.* at 16-17).[4] By

Order dated March 23, 2015, the Court adopted Parts A, B, and D of the Report and

Recommendation but as to Part C stated the following:

> [A]s to Part C and the conclusion, when Magistrate Judge Cassady issued
> his thorough report and recommendation he did not have the benefit of
> *Gissendaner v. Commissioner, Georgia Dept. of Corrections*, --- F.3d ---, 2015
> WL 859534 (11th Cir. March 2, 2015).[5] The Court will withhold ruling for

---

[2]       The statute of limitations recommendation was contained in Part B of the
Conclusions of Law portion of the undersigned's Report and Recommendation (*id.* at 8-13), Part
A simply consisting of the Motion to Dismiss Standard (*id.* at 6-8).

[3]       These recommendations were contained in Part C of the Conclusions of Law
portion of the undersigned's Report and Recommendation. (*Id.* at 13-15.)

[4]       This recommendation was contained in Part D of the Conclusions of Law portion
of the Report and Recommendation. (*Id.* at 16-17.)

[5]       "In *Gissendaner,* the Eleventh Circuit explained as follows: 'To succeed in an
Eighth Amendment challenge to a lethal injection protocol, a prisoner must establish an
objectively intolerable risk of harm that prevents prison officials from pleading that they were
subjectively blameless for purposes of the Eighth Amendment. That requires the prisoner to
show two things: (1) the lethal injection protocol in question creates a substantial risk of serious
(Continued)

thirty (30) days on the current motion to dismiss (based on failure to state a claim), to allow the Plaintiff to file a motion to amend the complaint. The motion should include a proposed amended complaint with sufficient facts addressing the second prong of *Baze v. Rees*, 553 U.S. 35, 50-52, 128 S.Ct. 1520, 1531-32, 170 L.Ed.2d 420 (2008) (plurality opinion) (Plaintiff must show that there are "known and available alternatives" that are "feasible, readily implemented, and in fact significantly reduce a substantial risk of severe pain.")[.]

If an amended complaint is allowed, the previously filed motion to dismiss based on failure to state a claim will be determined to be moot.

(Doc. 18, at 1-2.)

Plaintiff filed his motion for leave to amend complaint on April 21, 2015 and attached to the motion his proposed amended complaint. (Doc. 19.) The defendants filed a response in opposition on May 14, 2014 (Doc. 26) and, following the filing of plaintiff's reply brief in support of motion for leave to amend (Doc. 29), the defendants, on July 21, 2015, filed a supplemental motion to dismiss in light of the Supreme Court's decision in *Glossip v. Gross*, 2015 WL 2473454 (June 29, 2015) (Doc. 30).  By Order dated July 23, 2015, the Court granted in part and denied in part Price's motion to amend the complaint. The Court granted the motion to amend that "portion of his complaint related to his Eighth Amendment claim" (Doc. 31, at 2)[6] but denied—on the basis of futility—plaintiff's motion to amend to include a Fourteenth Amendment Equal Protection claim, finding this claim barred by the statute of limitations (*id.* at 5).

---

harm, and (2) there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce [the] substantial risk of severe pain.'" (Doc. 18, at 1 n.1, quoting *Gissendaner,* at *6 (other parenthetical information omitted).)

[6]    As a consequence, the Court found the defendants' original and supplemental motions to dismiss to be moot. (*See id.* at 3 n.1; *compare id. with* Doc. 34, at n.1 ("The Court inadvertently cited the incorrect document number corresponding to the supplemental motion to dismiss. Document number 30 should have been cited rather than 19. The finding remains unchanged.").)

Price filed his amended complaint on July 28, 2015. (Doc. 32.) Because Price's amended complaint is substantially similar to his initial complaint, save for that section of the amended complaint in which he sets forth a readily-implemented alternative to Alabama's three-drug lethal injection protocol (*see id.* at ¶¶ 48-56), the undersigned simply restates the findings of fact set forth in the February 24, 2015 report and recommendation (*see* Doc. 15), while citing to the amended complaint (*compare id. with* Doc. 32). At the conclusion of these "established facts," the undersigned will quote, in their totality, the plaintiff's "alternative" protocol allegations.

When Christopher Lee Price was a senior in high school, "he participated in a burglary[7] during which the homeowner, William Lynn, was killed." (Doc. 32, ¶ 16.) Price was convicted of capital murder and received a death sentence (*see id.*); he is a "death row inmate" housed at Holman Correctional Facility in Atmore, Alabama (*see id.* at ¶¶ 1 & 9).[8] "On September 11, 2014, the State [of Alabama] asked the Alabama Supreme Court to set an execution date" for the plaintiff (Doc. 1, at ¶ 17), one day after the defendants "unilaterally decided to adopt" an "untested three-drug [lethal injection]

---

[7]     In truth, Price participated in the first-degree robbery of Lynn's home during which Lynn was killed. *Price v. State, infra,* 725 So.2d at 1011.

[8]     The procedural course of Price's conviction has been well-explained in detail by the defendants. (*See* Doc. 10, at 8.) Price's conviction and sentence were affirmed on direct appeal, *Price v. State,* 725 So.2d 1003 (Ala.Crim.App. 1997), *aff'd,* 725 So.2d 1063 (Ala. 1998); his conviction and sentence became final when the United States Supreme Court denied his petition for writ of certiorari, *Price v. Alabama,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999). The Circuit Court of Fayette County, Alabama summarily dismissed Price's Rule 32 collateral attack on his conviction and sentence; "the Alabama Court of Criminal Appeals affirmed the dismissal in an unpublished decision[,] . . . [and t]he Alabama Supreme Court denied certiorari review." (Doc. 10, at 8.) Price then filed a federal habeas petition, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Alabama. (*Id.*) "After briefing, the district court issued a memorandum opinion and final judgment denying Price's petition with prejudice[.]" (*Id.*) The Eleventh Circuit Court of Appeals affirmed the district court's decision, *Price v. Allen,* 679 F.3d 1315 (2012) and the United States Supreme Court denied Price's petition for writ of certiorari on March 4, 2013, *Price v. Thomas,* ___ U.S. ___, 133 S.Ct. 1493, 185 L.Ed.2d 548 (2013).

protocol[.]" (*Id.* at ¶ 13.)[9] According to plaintiff, "the new three-drug protocol that the State now intends to use on [him] materially differs from the lethal injection protocols that Alabama has used on all previous inmates[,]" thereby making his "constitutional claims under 42 U.S.C. § 1983 . . . timely." (*Id.* at ¶ 15.) The primary relief sought by Price is an order from this Court enjoining the defendants from executing him using the protocol the State adopted on September 10, 2014 and declaring that the defendants' new lethal injection execution protocol violates his Eighth Amendment right to be free from cruel and unusual punishment. (*See id.* at ¶ 64 a. & c.)

> 58.     The State of Alabama has announced the intention to execute Mr. Price using a new three-drug protocol consisting of (a) 500 milligrams of midazolam hydrochloride,[10] (b) 600 milligrams of rocuronium bromide, and (c) 240 milliequivalents of potassium chloride.

> 59.     Defendants are acting under the color of Alabama law in undertaking to execute Mr. Price using the DOC's new three-drug protocol.

> 60.     It is substantially likely that midazolam hydrochloride will fail to render Mr. Price unconscious and insensate during the remainder of the execution, and that Mr. Price will therefore experience prolonged, excruciating, and needless pain while the rocuronium bromide forcibly suffocates him[11] and the potassium chloride burns his veins and internal organs and stops his heart[12].

---

[9]     "Alabama abandoned the use of the electric chair in favor of lethal injection[]" in 2002. (*Id.* at ¶ 18.)

[10]     "[T]he 'first drug' in every three-drug [lethal injection] protocol [utilized in the United States] is intended not to kill the inmate, but rather to render the inmate unconscious and insensate. [] From 2002 through 2013, the Alabama DOC used either sodium thiopental or pentobarbital to render the inmate unconscious and insensate prior to the administration of potassium chloride." (*Id.* at ¶¶ 22 & 23.)

[11]     "[Rocuronium bromide] does not affect consciousness or the perception of pain. Instead, it causes paralysis of the muscles, including the diaphragm. If an individual who is not fully unconscious and insensate is given the drug, the individual will feel as though he is being forcibly suffocated. The individual's suffering, however, is invisible to observers because the total body paralysis prevents the individual from crying out in pain." (*Id.* at ¶ 20; *see also id.* at ¶¶ 36-37 ("Midazolam hydrochloride is a benzodiazepine. Its FDA approved uses include sedation, anxiolysis (relief of fear and anxiety), and amnesia (including loss of memory). (Continued)

61.     Defendants are acting knowingly and with deliberate indifference to a feasible and readily implemented alternative protocol using properly compounded barbiturates, which would significantly reduce the substantial risk of severe pain to Mr. Price and which is used by at least seven other states.

62.     The violation of Mr. Price's constitutional rights is exacerbated by (a) the risk that the State of Alabama will obtain other drugs from non-FDA approved sources, and (b) the secret process through which the Alabama DOC adopts and implements its lethal injection protocol, and (c) the inadequacy of whatever "consciousness checks" the Alabama DOC intends to perform prior to administering the rocuronium bromide and potassium chloride.

63.     If Alabama's recently adopted protocol is used to execute Mr. Price, Mr. Price will be subject to cruel and unusual punishment in violation of the Eighth Amendment to the United States Constitution.

(*Id.* at ¶¶ 58-63 (footnotes added).) Plaintiff bases his allegation that midazolam

hydrochloride[13] will fail to render him unconscious and insensate during the remainder

of the execution not only on the properties of the drug itself (*compare id.* at ¶ 25

---

Midazolam hydrochloride can also depress respiration when administered in sufficient doses. [] Unlike sodium thiopental and pentobarbital, midazolam hydrochloride is not a barbiturate. It is not generally administered to suppress responses to noxious stimuli and does not act as an analgesic. The sedative properties of midazolam hydrochloride do not suppress responses to noxious stimuli. A person who is sedated can still experience stimuli, including painful stimuli. The amnesia-inducing properties of midazolam hydrochloride may prevent a person from *remembering* the pain and suffering he experienced while under the effects of the drug. However, even if the individual suffers from a lack of memory *after* the fact, the individual is absolutely experiencing pain and suffering *during* the fact. Unlike sodium thiopental, even at high doses, midazolam hydrochloride will not induce a state of anesthesia sufficiently deep to prevent an individual from perceiving and feeling the pain and suffering associated with rocuronium bromide and potassium chloride." (emphasis in original)).)

[12]     "Medical experts and law enforcement authorities agree that, unless the inmate is completely unconscious and insensate, the administration of potassium chloride will cause the inmate prolonged pain, including an excruciating burning sensation throughout the entire body[.]" (*Id.* at ¶ 19.)

[13]     Plaintiff alleges that the defendants' decision to utilize midazolam hydrochloride as part of its lethal-injection protocol stems from "the State's *claim* that sodium thiopental, pentobarbital, and all other similar general anesthetics are presently unavailable to the Alabama DOC for use in executions." (*Id.* at ¶ 26 (emphasis supplied; citation omitted).)

("Midazolam hydrochloride is a sedative that is not generally used clinically as a stand-alone general anesthetic. Midazolam hydrochloride is not an analgesic and does not suppress responses to noxious stimuli. Unlike sodium thiopental, midazolam hydrochloride will not induce general anesthesia sufficient to prevent an individual from perceiving and feeling pain from noxious stimuli such as rocuronium bromide and potassium chloride, even at high doses.") *with id.* at ¶ 30 ("[E]ven where a large dose of midazolam hydrochloride induces a state of anesthesia in an inmate, it is not a *deep* state of anesthesia, and the rocuronium bromide and potassium chloride are substantially likely to cause pain and suffering that will 'break through' the midazolam hydrochloride.")) but, as well, on the details of a series of "botched" executions across the country that unsuccessfully attempted to utilize midazolam hydrochloride to render executed inmates unconscious and insensate (*id.* at ¶¶ 27, 39 & 41-43). According to plaintiff, because midazolam hydrochloride will not render him unconscious and insensate, he will experience physical pain and suffering despite the amnesia-inducing properties of the drug and his inability to audibly or visibly express pain due to administration of the paralytic agent rocuronium bromide. (*Compare id.* at ¶ 20 ("[Rocuronium bromide] causes paralysis of the muscles, including the diaphragm. If an individual who is not fully unconscious and insensate is given the drug, the individual will feel as though he is being forcibly suffocated. The individual's suffering, however, is invisible to observers because the total body paralysis prevents the individual from crying out in pain.") *with id.* at ¶ 33 ("The Constitution does not allow a state to subject a death row inmate to prolonged and excruciating pain and suffering, regardless of whether the state takes steps to ensure that the inmate's pain is invisible to third-party observers.").).

Price filed his § 1983 complaint in this Court on October 8, 2014 (Doc. 1, at 1), less than one month after the defendant Commissioner of the Alabama Department of Corrections ("DOC") amended the Department's lethal injection protocol (*compare id. with* Doc. 32, at ¶ 24), and, on July 23, 2015, was granted leave of court to amend his Eighth Amendment claim (Doc. 31, at 2) to set forth facts establishing that "'there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce [the] substantial risks of severe pain.'" (Doc. 18, at 1 n.1, quoting *Gissendaner,* 2015 WL 859534, at *6.) Plaintiff's allegations in this regard consist of the following:

> 48.     At least seven states, including South Dakota, Pennsylvania, Georgia, Texas, Ohio, Mississippi and Missouri have used or intend to use compounded barbiturates (including pentobarbital or sodium thiopental) for executions.

> 49.     Although a lethal injection protocol including compounded barbiturates presents clear risks, if proper safeguards of the compounding process are observed it provides less risk of severe harm to Mr. Price compared to Alabama's current three-drug cocktail. THE CONSTITUTION PROJECT'S DEATH PENALTY COMMITTEE, IRREVERSIBLE ERROR: RECOMMENDED REFORMS FOR PREVENTING AND CORRECTING ERRORS IN THE ADMINISTRATION OF CAPITAL PUNISHMENT 139-140 (2014).

> 50.     Still, because of the risks associated with compounding drugs, if Alabama were to change its current lethal injection cocktail to a protocol including either compounded pentobarbital or compounded sodium thiopental, the compounding of the drug must be subject to strict safeguards to ensure that it is compounded properly and accurately without any contaminants.

> 51.     On information and belief, including evidence that it is now the present practice of several other states, Mr. Price alleges that the use of a properly compounded barbiturate, in particular properly compounded pentobarbital or properly compounded sodium thiopental, in lieu of midazolam, is a feasible, readily implemented alternative procedure available to the State of Alabama. Such a protocol would significantly reduce the substantial risk of severe pain to Mr. Price. Accordingly, the State's proposed use of a three-drug protocol using midazolam, which has been shown to cause severe harm, is actionable under the Eighth Amendment as recently construed by the Supreme Court in *Glossip v. Gross.*

.      .      .

52.    Upon information and belief, in Alabama, executions are administered by non-medical personnel who lack training in administering intravenous drugs and are not qualified to determine whether an inmate is completely unconscious and insensate. This creates a substantial risk that officials will depart from the protocol, fail to administer the drugs correctly, or otherwise fail to carry out the execution in a manner that complies with constitutional requirements.

53.    Upon information and belief, Defendants have failed to consistently implement a "consciousness assessment" in a manner that ensures that every inmate is unconscious before the administration of rocuronium bromide and potassium chloride. In some cases, Defendants have completely failed to perform a "consciousness assessment" such as a "pinch test."

54.    Even if a "pinch test" is performed, Alabama does not employ personnel medically trained on the proper administration of the pinch test. Personnel administering the pinch test lack training and knowledge of how hard to pinch inmates in order to properly conduct the pinch test. In addition, Alabama has failed to implement effective training protocols to ensure that the pinch test safeguard is applied equally across executions. Thus, even assuming that the proper use of a "consciousness check" could provide a reliable indication of whether an inmate is and will remain unconscious and insensate for the remainder of the execution procedure, the State has not undertaken adequate procedures to ensure that any "consciousness check" is done properly.

55.    The State's failures to implement and consistently perform an effective and consistent consciousness test raise a serious and unnecessary risk that inmates will not be unconscious during the administration of the second and third drugs in the lethal injection protocol. If an inmate was conscious during the administration of rocuronium bromide and potassium chloride, that inmate would experience intolerable pain in violation of the Eighth Amendment's protections against cruel and unusual punishment.

56.    In addition, the State's failure to consistently and uniformly perform a "consciousness assessment" on an inmate selectively introduces additional risk in some lethal injections but not others. *Cooey v. Kasich*, 801 F.Supp. 623, 653 (S.D. Ohio 2011).

(Doc. 32, at ¶¶ 48-56; *see also id.* at ¶¶ 4-5 ("The State intends to use [a three-drug]

protocol even though a feasible, readily implemented alternative procedure using a

protocol including properly compounded barbiturates (either pentobarbital or sodium

9

thiopental), exists and would significantly reduce the substantial risk of severe pain to Mr. Price. At least seven states currently use or intend to use compounded pentobarbital or sodium thiopental in their lethal injection protocols. [] In addition, despite knowledge that administration of the second and third drugs, rocuronium bromide and potassium chloride respectively, will cause intolerable pain if the inmate is not properly anesthetized, the State has failed previously to conduct a 'consciousness assessment' in accordance with its own lethal injection protocol and failed to provide sufficient training related to the 'consciousness assessment' to the non-medical personnel who carry[] out the execution.").)

Less than two weeks following the filing of the amended complaint, that is, on August 11, 2015, the defendants filed a motion to dismiss amended complaint (Doc. 35), which completely tracks their supplemental motion to dismiss (*compare id. with* Doc. 30), save with respect to the last substantive paragraph which seeks the striking of ¶¶ 52-56 of the amended complaint (*see* Doc. 35, at 27).[14] The undersigned questions the

---

[14]     Although the defendants move to strike ¶¶ 52-56, nowhere do they cite to appropriate authority for the striking of these averments (*see id.*) and offer no reply in opposition to plaintiff's argument that these allegations remain relevant to his Eight Amendment claim (Doc. 37, at 18-19; *see also id.* at 19 ("[T]hese paragraphs provide more detail about circumstances that call even deeper into question the State's planned experimental use of midazolam to execute inmates: that Alabama's inadequate consciousness check practices exacerbate the substantial risk of severe pain that is inherent in the use of midazolam as the first drug in the lethal injection protocol.")). (*See* Doc. 38 (no additional argument in reply regarding why ¶¶ 52-56 should be stricken).) And if the defendants are seeking the striking of these paragraphs of the amended complaint based on Rule 12(f) of the Federal Rules of Civil Procedure, the undersigned simply recommends that the Court exercise its discretion and not strike the foregoing allegations. *See Tracfone Wireless, Inc. v. Access Telecom, Inc.*, 642 F.Supp.2d 1354, 1360 (S.D. Fla. 2009) ("The Court has broad discretion in considering a motion to strike under Federal Rule of Civil Procedure 12(f).").

Rule 12(f) provides that "[t]he court *may* strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f) (emphasis supplied).

(Continued)

propriety of the defendants' filing of the instant motion to dismiss given that the Court found, first on July 23, 2013 (Doc. 31) and again on July 29, 2015 (Doc. 34), that the supplemental motion to dismiss was moot (*compare id. with* Doc. 31, at 3 n.1). Nevertheless, the undersigned considers the defendants' motion and **RECOMMENDS** that it be **DENIED**.

---

> The purpose of a motion to strike is to clean up the pleadings, streamline litigation, and avoid unnecessary forays into immaterial matter. A court will not exercise its discretion under the rule to strike a pleading unless the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party. Because striking a portion of a pleading is a drastic remedy and because it often is sought by the movant simply as a dilatory tactic, motions under Rule 12(f) are viewed with disfavor and are infrequently granted.

*Principal Bank v. First American Mortgage, Inc.,* 2014 WL 1268546, *1 (M.D. Fla. Mar. 27, 2014) (internal citations, quotation marks, and brackets omitted)); *see also TracFone Wireless, Inc. v. Zip Wireless Products, Inc.,* 716 F.Supp.2d 1275, 1290 (N.D. Ga. 2010) ("Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process. Motions to strike are generally viewed with disfavor and are often considered time wasters. A motion to strike is a drastic remedy to be resorted to only when required for the purposes of justice . . . and should be granted only when the pleading to be stricken has no possible relation to the controversy." (internal citations, quotation marks, and brackets omitted)). Indeed, stated more succinctly, "[i]n addressing a Motion to Strike, 'a court will not exercise its discretion . . . unless ***the matter sought to be omitted*** has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party.'" *Hepp v. Paul Revere Life Ins. Co.,* 2014 WL 3865389, *7 (M.D. Fla. Aug. 5, 2014) (emphasis supplied); *see also Tracfone Wireless, Inc. v. Access Telecom, Inc., supra,* 642 F.Supp.2d at 1361 (""A motion to strike will usually be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties.'" (citations omitted)).

If the Court proceeds beyond the initial problem identified and finds that the defendants are making a Rule 12(f) motion to strike, the undersigned recommends that the Court deny the motion to strike the entirety of ¶¶ 52-56 due to the defendants' wholesale failure to establish that the entirety of those paragraphs (as opposed to simply select allegations, words, or sentences) have no possible relation to the controversy, may confuse the issues, or otherwise may prejudice the defendants. *See Tracfone Wireless, Inc. v. Access Telecom, Inc., supra,* 642 F.Supp.2d at 1361 ("Defendants have not made any showing that any particular word, recitation, or allegation conforms to this standard.").

## CONCLUSIONS OF LAW

### A.   Motion to Dismiss Standard.

A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible

12

on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. United States Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to belief above the speculative level.'"); *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be

dismissed if the facts as pled do not state a claim for relief that is plausible on its face."
(internal citations and quotation marks omitted)), *abrogated on other grounds as stated in*
*Mohamad v. Palestinian Auth.*, ___ U.S. ___, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

    **B.**    **Whether Price has Stated a Plausible Eighth Amendment Claim.**  In
*Glossip v. Gross*, ___ U.S. ___, 135 S.Ct. 2726, 192 L.Ed.2d 761 (2015), the Supreme Court
affirmed the district court's denial of four Oklahoma death row inmates' application for
a preliminary injunction in the context of their Eighth Amendment challenge to the
method of execution utilized by the State of Oklahoma, namely their challenge to the
first drug (i.e., midazolam) employed in the State's three-drug lethal injection protocol.
*Id.* at ___, 135 S.Ct. at 2731 ("For two independent reasons, we also affirm. First, the
prisoners failed to identify a known and available alternative method of execution that
entails a lesser risk of pain, a requirement of all Eighth Amendment method-of-
execution claims. Second, the District Court did not commit clear error when it found
that the prisoners failed to establish that Oklahoma's use of a massive dose of
midazolam in its execution protocol entails a substantial risk of severe pain." (internal
citation omitted)). In the course of their opinion, the Supreme Court set forth the
relevant legal framework underpinning a successful Eighth Amendment challenge to a
method of execution, such as death by lethal injection. *Id.* at ___, 135 S.Ct. at 2737.

> The controlling opinion in *Baze* first concluded that prisoners
> cannot successfully challenge a method of execution unless they establish
> that the method presents a risk that is *sure or very likely* to cause serious
> illness and needless suffering, and give rise to sufficiently *imminent*
> dangers. To prevail on such a claim, there must be a substantial risk of
> serious harm, an objectively intolerable risk of harm that prevents prison
> officials from pleading that they were subjectively blameless for purposes
> of the Eighth Amendment. The controlling opinion also stated that
> prisoners cannot successfully challenge a State's method of execution
> merely by showing a slightly or marginally safer alternative. Instead,
> prisoners must identify an alternative that is feasible, readily
> implemented, and in fact significantly reduces a substantial risk of severe
> pain. . . . A stay of execution may not be granted on grounds such as those

> asserted here unless the condemned prisoner establishes that the State's lethal injection protocol creates a demonstrated risk of severe pain. And he must show that the risk is substantial when compared to the known and available alternatives.

*Id.* (internal quotation marks, citations, and brackets omitted; emphasis in original). In other words: "To succeed in an Eighth Amendment challenge to a lethal injection protocol, a prisoner must establish an objectively intolerable risk of harm that prevents prison officials from pleading that they were subjectively blameless for purposes of the Eighth Amendment. That requires a prisoner to show two things: (1) the lethal injection protocol in question creates a substantial risk of serious harm, and (2) there are known and available alternatives that are feasible, readily implemented, and that will in fact significantly reduce the substantial risk of severe pain." *Gissendaner v. Commissioner, Georgia Dep't of Corrections,* 779 F.3d 1275, 1283 (11th Cir.) (internal quotation marks, citations and brackets omitted), *cert. denied,* ___ U.S. ___, 135 S.Ct. 1580, 191 L.Ed.2d 661 (2015); *see also Chavez v. Florida SP Warden,* 742 F.3d 1267, 1272 (11th Cir. 2014) (same), *cert. denied,* ___ U.S. ___, 134 S.Ct. 1156 (2014).

The undersigned would note that the Supreme Court's decision in *Glossip* followed that of the Eleventh Circuit in *Gissendaner, compare Glossip,* 135 S.Ct. 2726 (decided June 29, 2015) *with Gissendaner,* 779 F.3d 1275 (decided March 2, 2015), and in affirming the district court's denial of the application for a preliminary injunction, the Supreme Court utilized the following language: "First, petitioners have not *proved* that any risk posed by midazolam is substantial when compared to known and available alternative methods of execution. Second, they have failed to *establish* that the District Court committed clear error when it found that the use of midazolam will not result in severe pain and suffering." *Glossip, supra,* at ___, 135 S.Ct. at 2737-2738 (emphasis supplied). To be sure, the Supreme Court recognized that *Baze* made clear that "the

Eighth Amendment requires a prisoner to plead and prove a known and available alternative[,]" *id.* at ___, 135 S.Ct. at 2738; however, the Supreme Court's affirmance of the District Court's opinion in this regard ultimately was based on a failure of proof, not a failure to plead. *See id.* ("In their amended complaint, petitioners proffered that the State could use sodium thiopental as part of a single-drug protocol. They have since suggested that it might also be constitutional for Oklahoma to use pentobarbital. ***But the District Court found that both sodium thiopental and pentobarbital are now unavailable to Oklahoma's Department of Corrections***. The Court of Appeals affirmed that ***finding***, and ***it is not clearly erroneous***. On the contrary, ***the record shows*** that Oklahoma has been unable to procure those drugs despite a good-faith effort to do so. Petitioners do not seriously contest this ***factual finding***, and they ***have not identified any available drug or drugs that could be used in place of those that Oklahoma is now unable to obtain. Nor have they shown a risk of pain so great that other acceptable, available methods must be used.*** Instead, they argue that they need not identify a known and available method of execution that presents less risk. But this argument is inconsistent with the controlling opinion in *Baze*.")  Here, of course, Price has identified in his amended complaint known and available alternative drugs to midazolam, namely, compounded barbiturates, including compounded sodium thiopental and compounded pentobarbital (Doc. 32, at ¶¶ 4, 48, 51 & 61) and, as well, has alleged that the risk posed by midazolam is substantial when compared to properly compounded barbiturates (*compare id.* at ¶¶ 25-30 & 36-44 *with id.* at ¶¶ 4, 48-49, 51 & 61). And even if this Court could find that pentobarbital and sodium thiopental are now unavailable to Alabama's Department of Corrections (*cf.* Doc. 32, ¶ 26 ("Defendants' decision [to utilize midazolam hydrochloride] was based on the State's *claim* that sodium thiopental, pentobarbital, and all other similar general anesthetics are presently unavailable to the

16

Alabama DOC for use in executions." (emphasis supplied))), it certainly cannot specifically find, at this stage in the proceedings, either that compounded barbiturates are presently unavailable to the Alabama Department of Corrections or that plaintiff will be unable to prove that the risk posed by midazolam is substantial when compared to compounded barbiturates. While Judge DuBose will certainly be in a position to make such findings following an evidentiary hearing (or at a trial on the merits), *see Glossip, supra,* 135 S.Ct. at 2735 & 2737-2738 (factual findings underpinning the denial of the prisoners' application for a preliminary injunction were made after a 3-day evidentiary hearing conducted on the heels of a truncated period of discovery), the undersigned is not in a position to recommend the jettisoning of plaintiff's amended complaint for failure to state a claim where not one other district court in Alabama has staked such position to date, *see, e.g., Arthur v. Myers,* 2015 WL 5093518, *4 (M.D. Ala. Aug. 28, 2015) (discovery order entered in the wake of *Glossip* in which Chief District Judge W. Keith Watkins noted that prior to the conducting of a final hearing on plaintiff's § 1983 challenge to Alabama's three-drug lethal injection protocol, plaintiff was entitled to some additional discovery, including discovery directed to the efficacy of midazolam and "[t]he availability or unavailability of pentobarbital or compounded pentobarbital to the Alabama Department of Corrections.").

　　As for the first prong, whether plaintiff has failed to plead that the use of midazolam hydrochloride is surely or very likely to cause a risk of severe pain, the undersigned does not deviate from the analysis contained in the initial report and recommendation in this regard (Doc. 15, at 14 ("'In support of th[e] argument [that plaintiff has failed on the first prong], the State points to cases that have recognized that a properly injected 500-milligram dose of midazolam will effectively render an inmate unconscious prior to the administration of the second and third drugs in a three-drug

protocol like Alabama's. *See Muhammad v. Crews*, No. 3:13-cv-1587-J-32JBT, 2013 WL 6844489, at *1 (M.D. Fla. Dec. 27, 2013); *Chavez v. Palmer,* No. 3:14-cv-110-J-39JBT, 2014 WL 521067, at *1 (M.D. Fla. Feb. 10, 2014); *Howell v. State,* 133 So.2d 511 (Fla. 2014); *Henry v. State,* 134 So.3d 938 (Fla. 2014); and *Muhammad v. State,* 132 So.2d 176 (Fla. 2013). However, all of these cases, while addressing the efficacy of midazolam in the lethal-injection context, did so only after an evidentiary hearing. In this case, there is no evidence concerning whether the use of midazolam as the first drug in Alabama's three-drug protocol will surely or very likely cause serious illness and needless suffering to [the plaintiff]. All that is before the court are [plaintiff's] allegations that midazolam will have such an effect. Thus, without allowing [plaintiff] to . . . conduct discovery on the efficacy of midazolam in the lethal-injection context, this court cannot summarily dismiss his Eighth Amendment claim for failure to state a claim under Rule 12(b)(6).'")), particularly since the Supreme Court's decision in *Glossip* does nothing other than underscore that the first prong is a fact-dependent evidentiary inquiry, *see Glossip, supra,* 135 S.Ct. at 2740 & 2741 ("[A]n inmate challenging a protocol bears the burden to show, ***based on evidence presented to the court***, that there is a substantial risk of severe pain. . . . Based on the evidence that the parties presented to the District Court [during the 3-day evidentiary hearing in December 2014, after discovery], we must affirm [the District Court's denial of the prisoners' application for a preliminary injunction]." (emphasis supplied)).[15]

In light of the foregoing, the undersigned **RECOMMENDS** that the Court **DECLINE** to summarily dismiss Price's amended complaint pursuant to Rule 12(b)(6).

---

[15]     As additional support for the undersigned's position that *Glossip* does not support the dismissal of plaintiff's claim at the pleadings stage of this litigation, the Court need simply look to plaintiff's opposition to the defendants' motion to dismiss. (*See* Doc. 37, at 4-16.)

This is an apt result particularly since, as alluded to above, the district court in *Glossip* simply "denied the inmates' motion for a preliminary injunction[]" but did not dismiss their complaints (Doc. 37, at 5); "[i]n fact, the inmates' complaints presently remain pending, and the district court recently set deadlines for discovery and a trial date of April 12, 2016." (*Id.* at 6, citing *Glossip v. Gross*, No. 5:14-cv-00665-F (W.D. Okla.) ECF No. 209.)[16]

C.    **Whether Plaintiff's Claim is Time-Barred**.  The undersigned simply recommends that the Court reject the defendants' argument in this regard inasmuch as the Supreme Court's decision in *Glossip* does not foreclose the undersigned's previous analysis of this issue (*see* Doc. 15, at 8-13), or the Court's adoption of the undersigned's recommendation in this regard (Doc. 18). Notably, *Glossip* is not a statute of limitations case. *See Glossip, supra*. Moreover, the Supreme Court's decision in *Glossip*, affirming the district court's denial of the prisoners' application for a preliminary injunction, hinges itself to the factual findings of the district court made during a three-day evidentiary hearing, which followed on the heels of a thirty-day discovery period. *See id.* at ___, 135 S.Ct. at 2735-2736 & 2737-2746. Accordingly, *Glossip* does nothing to counter the Eleventh Circuit's clear recognition that "the question of whether a significant change has occurred to a state's lethal injection protocol is a fact-intensive inquiry for which an evidentiary hearing is especially important." *Chavez, supra,* 742 F.3d at 1275 (Wilson, C.J., concurring); *see also Wellons v. Commissioner, Georgia Dep't of Corrections,* 754 F.3d 1260, 1263 (11th Cir.) ("In *Arthur v. Thomas,* we held that whether a significant change

---

[16]     As appropriately recognized by the plaintiff, "[t]he Supreme Court [in *Glossip*] did not purport to address whether the inmates' complaints were sufficient to survive a motion to dismiss and proceed to discovery[]" (*id.* at 5-6); instead, the Supreme Court was tasked with determining whether the district court appropriately denied four condemned prisoners' application for a preliminary injunction. *Glossip, supra,* 135 S.Ct. at 2731.

has occurred in a state's method of execution is a fact dependent inquiry."), *cert. denied,*
134 S.Ct. 2838, 189 L.Ed.2d 803 (2014); *Arthur v. Thomas,* 674 F.3d 1257, 1260 (11th Cir.
2012) ("Whether a significant change has occurred in a state's method of execution is a
fact-dependent inquiry, which we have treated as such in each of our recent cases
addressing the lethal injection protocols of Alabama, Georgia and Florida. Although we
concluded in *Powell v. Thomas,* 643 F.3d 1300 (11th Cir. 2011), *DeYoung v. Owens,* 646
F.3d 1319 (11th Cir. 2011) and *Valle v. Singer,* 655 F.3d 1223, 1226 (11th Cir. 2011), that
the replacement of sodium thiopental with pentobarbital did not constitute a
'significant change' in the lethal injection execution protocol, each of these decisions is
premised on the specific factual allegations and/or evidence presented and *considered* in
each of those cases. None of the previous courts that were asked to decide whether the
substitution of pentobarbital for sodium thiopental is a 'significant change' in the lethal
injection protocol could have resolved, nor did they resolve, that claim without
considering the facts and evidence. Simply because no court, based on the allegations
and evidence that has been presented in cases to date, has found a significant change
does not mean that such evidence does not exist. To read our circuit decisions in *Powell*,
*DeYoung*, and *Valle* as holding—no matter what new facts allege or new evidence
reveals—that Alabama's, Georgia's and Florida's substitutions of pentobarbital for
sodium thiopental is not a significant change in their execution protocols is to ignore the
reality that scientific and medical evidence that exists today may differ from that which
new scientific and medical discoveries and research reveal tomorrow."). The federal
district courts in Alabama, including this Court, should be given the first opportunities
to decide the many Eighth Amendment challenges to Alabama's three-drug lethal
injection protocol presently pending, *see, e.g.,*
http://www.al.com/news/birmingham/index.ssf/2015/10/judge (last visited October

15, 2015, 10:50 a.m.) (article recognizing that United States District Judge Keith Watkins denied "a motion by the Alabama Attorney General's Office to either have an execution by a midazolam-only protocol or, in the alternative, dismiss lawsuits by the five inmates [that is, Demetrius Frazier, Carey Dale Grayson, David Lee Roberts, Robin Dion Myers, and Gregory Hunt] challenging the state's chosen three-drug method of lethal injection."), rather than relying on the evidence presented by Oklahoma inmates in *Glossip* at an evidentiary hearing directed to whether the condemned inmates' motions to preliminarily enjoin the State of Oklahoma from executing them using a lethal injection protocol that included midazolam should be granted. This is because reliance on the evidence presented to the district court in *Glossip* would effectively "throw the baby out with the bath water" and prevent condemned inmates like Price from "presenting an anesthesiologist or expert to assert an opinion based on more conclusive and methodologically sound results." *Chavez, supra,* 742 F.3d at 1275-1276 (Wilson, C.J., concurring); *see also Arthur, supra,* 754 F.3d at 1263 ("Simply because no court, based on the allegations and evidence that has been presented in cases to date, has found a significant change does not mean that such evidence does not exist."). This issue is too significant to be resolved at the motion to dismiss stage without the opportunity for a period of discovery followed by an evidentiary hearing (or trial) conducted by District Judge DuBose and the Court's determination of whether the substitution of midazolam hydrochloride for pentobarbital (or sodium thiopental) is a substantial change in Alabama's method of execution. Accordingly, the Magistrate Judge **RECOMMENDS** that the Court **DECLINE** to find Price's Eighth Amendment claim barred by the applicable statute of limitations in absence of an opportunity for factual development, including discovery between the parties, and an evidentiary hearing (or a trial on the merits).

<u>**CONCLUSION**</u>

Based upon the foregoing, the Magistrate Judge recommends that the defendants' motion to dismiss amended complaint (Doc. 35) be **DENIED**.

<u>**NOTICE OF RIGHT TO FILE OBJECTIONS**</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 20th day of October, 2015.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**