IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER LEE PRICE,  )  | |
|     Plaintiff,  ) | |
| ) | |
| vs.  ) | Civil Action No. 14-0472-KD-C |
| ) | |
| JEFFERSON S. DUNN,  ) | |
| COMMISSIONER, ALABAMA  ) | |
| DEPARTMENT OF CORRECTIONS, in  ) | |
| his official capacity, *et al.*, | |
|     Defendants. | |

## **ORDER**

This action came before the Court for a non-jury trial on December 12, 2016. On September 14, 2016, the Court ordered:

> In the interest of efficiency and to conserve the resources of the parties and Court, the issues to be tried will be bifurcated. The trial commencing on December 12, 2016 will address only one issue: the availability of an alternative method of execution to the State's current execution protocol. If Plaintiff meets his burden to prove an alternative method of execution that is readily available, the Court will then consider in the second phase of the trial (on a date to be set after the conclusion of the first phase) the remainder of the issues, including, but not limited to: (1) whether the use of midazolam presents a risk that is sure or very likely to cause serious illness and needless suffering, and give rise to sufficiently imminent dangers; (2) if so, whether the alternative method of execution designated by Plaintiff is feasible, readily implemented, and in fact significantly reduces a substantial risk of severe pain; and (3) whether the switch from pentobarbital to midazolam in September of 2014 was a substantial change in the execution protocol so as to reset the statute of limitations clock.

(Doc. 81 at 1-2). Upon consideration of the arguments and evidence presented at trial, the parties' pre-trial briefs (Docs. 55, 56, 68, 71, 72, 76, 78, and 79)[1], and all other pertinent portions of the record, the Court makes the following findings of fact and conclusions of law.

---

[1] The briefs filed in support of and in opposition to Defendants' Motion for Summary Judgment were converted to pre-trial briefs. (Doc. 81).

I.      Background and Findings of Fact[2]

On February 5, 1993, Plaintiff Christopher Lee Price ("Price") was convicted of capital felony murder of William Lynn, a minister in the small town of Fayette County, Alabama, that occurred during the course of a robbery at Lynn's home. The Alabama state court's decision in Price's direct criminal appeal contains a detailed description of the facts. *See Price v. State,* 725 So.2d 1003, 1011-12 (Ala.Crim.App.1997). Price's conviction and sentence became final on May 24, 1999. *See Price v. Alabama*, 526 U.S. 1133 (1999)(*cert. denied*).[3] Price is currently on death row at Holman Correctional Facility in Atmore, Alabama.

In 2002, the Alabama Department of Corrections ("ADOC") began using a three drug protocol as its default method of execution by lethal injection. (Doc. 32 at 6; Doc. 43 at 3).[4] From 2002 through 2013, ADOC used either sodium thiopental[5] or pentobarbital as the first drug in the three-drug protocol. (Doc. 32 at 7). On September 10, 2014, ADOC amended its lethal injection protocol to substitute midazolam hydrochloride in place of pentobarbital as the first

---

[2] The Court's findings of fact are derived primarily from the uncontested portions of the Amended Complaint, the uncontested portions of the parties' trial briefs, the deposition testimony of Plaintiff's expert witness, Gaylen M. Zentner, Ph.D., ("Zentner") an expert in pharmaceutical chemistry, manufacturing, and compounding, and the deposition, affidavit, and trial testimony of ADOC General Counsel Ann Adams Hill ("Hill"). At trial, the Court noted that its reliance on Zentner's testimony would be limited in that "the only thing it would take away from" Zentner's deposition was that compounded pentobarbital is "not hard to make if you have the supplies." (Doc. 105 at 50-51).

[3] Price's conviction and sentence were affirmed on direct appeal, *Price v. State,* 725 So.2d 1003 (Ala.Crim.App.1997), *aff'd,* 725 So.2d 1063 (Ala.1998); his conviction and sentence became final when the United States Supreme Court denied his petition for writ of certiorari, *Price v. Alabama,* 526 U.S. 1133, 119 S.Ct. 1809, 143 L.Ed.2d 1012 (1999). The Circuit Court of Fayette County, Alabama summarily dismissed Price's Rule 32 collateral attack on his conviction and sentence; "the Alabama Court of Criminal Appeals affirmed the dismissal in an unpublished decision[,] ... [and t]he Alabama Supreme Court denied certiorari review." (Doc. 10, at 8.) Price then filed a federal habeas petition, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Northern District of Alabama. (*Id.*) "After briefing, the district court issued a memorandum opinion and final judgment denying Price's petition with prejudice[.]" (*Id.*) The Eleventh Circuit Court of Appeals affirmed the district court's decision, *Price v. Allen,* 679 F.3d 1315 (2012) and the United States Supreme Court denied Price's petition for writ of certiorari on March 4, 2013, *Price v. Thomas*, 133 S. Ct. 1493 (2013).

[4] An inmate may elect to be executed via electrocution.

[5] Although sodium thiopental was mentioned in Plaintiff's Amended Complaint, Counsel for Price stated at trial that Price is no longer pursuing a claim that sodium thiopental is an alternative. (Doc. 105 at 52). Thus, the inquiry here focuses on whether Price has met his burden regarding pentobarbital.

drug in its three-drug lethal injection protocol. (Doc. 32 at 7; Doc. 43 at 4).  On September 11, 2014, the State of Alabama asked the Alabama Supreme Court to set Price's execution date. (Doc. 32 at 2; Doc. 43 at 1)

In September 2014, when ADOC amended its three-drug lethal injection protocol, it was unable to obtain manufactured pentobarbital. (Doc. 55-4 at 2; Doc. 32 at 8-9). Though manufactured pentobarbital became unavailable for use in lethal injections, some states obtained compounded pentobarbital for use in executions. (Doc. 105 at 13). Georgia, Missouri, Texas, and Virginia have used compounded pentobarbital for lethal injections since 2014.[6]

On October 8, 2014, Price filed his original complaint in this matter, seeking a preliminary injunction prohibiting the State from executing him under its amended protocol. (Doc. 1).  Price was permitted leave to amend his complaint (Docs. 18 and 31), and this case is now proceeding under Price's Amended Complaint (Doc. 32).  In his Amended Complaint, citing 28 U.S.C. § 1983, Price requests that this Court enjoin Defendants from executing him using the lethal injection protocol adopted by the State on September 10, 2014, on the grounds that the use of midazolam hydrochloride as the first drug will violate his right to be free from cruel and unusual punishment under the Eighth Amendment. (*See generally* Doc. 32).

On February 19, 2016, Defendants filed a Motion for Summary Judgment contending that Price cannot prove the required elements of his Eighth Amendment claim. (Doc. 55). This Court entered an order withholding ruling on Defendants' motion until after the close of discovery. (Doc. 62). After discovery closed, both parties filed additional briefs. (Docs. 68, 71, 72, 76, 78,

---

[6] In October 2015, Virginia executed one person using compounded pentobarbital that it obtained from the Texas Department of Criminal Justice as part of an earlier agreement between the two states, but it does not have a source for compounded pentobarbital. (Doc. 72-4). Additionally, at trial, the parties entered the following stipulations into the record: (1) "In 2016, the states of Georgia, Texas, and Missouri collectively have executed 17 individuals using a one-drug, pentobarbital, lethal injection protocol; and (2) The most recent of those 17 executions was Georgia's execution of William Sallie on December 6, 2016." (Doc. 105 at 3).

and 79). The Court denied Defendants' Motion for Summary Judgment, set the case for a bifurcated non-jury trial, and converted the summary judgment briefs to pre-trial briefs. (Doc. 81).

On December 12, 2016, this action proceeded to a non-jury trial on the sole issue of the availability of an alternative method of execution to the State's current execution protocol. At trial, ADOC General Counsel Ann Adams Hill ("Hill"), who is the ADOC employee responsible for procuring drugs for use in lethal injections, testified about her efforts to obtain either compounded pentobarbital or a source for the drug. (Doc. 105 at 5-6). In the fall of 2015, Hill contacted the departments of corrections for the states of Georgia, Texas, Virginia, and Missouri in an attempt to obtain compounded pentobarbital or a source for the drug. (Doc. 105 at 14-16). This effort was unproductive. In December 2015, Hill contacted 18 compounding pharmacies within Alabama in effort to obtain compounded pentobarbital, but none were willing or able to provide the drug. (Doc. 105 at 31, 38-39).[7] Hill has not attempted to contact compounding pharmacies in any other state and has not tried to contact the previously contacted Alabama compounding pharmacies since December 2015. (Doc. 105 at 31).

Between the fall of 2015 and immediately prior to trial, ADOC has continued to seek out a supplier for compounded pentobarbital. (Doc. 105 at 26-27). Specifically, Hill has reached out to the departments of corrections of Missouri, Texas, Georgia, and Virginia in the "few weeks" prior to trial to inquire whether they would provide compounded pentobarbital to ADOC or give her information concerning the suppliers. (Doc. 105 at 15, 26-27). These efforts were unsuccessful. (Id.). Hill did not ask the state officials to pass along her information to their suppliers to see whether the suppliers were interested in providing compounded pentobarbital to ADOC. (Doc. 105 at 27).

---

[7] Hill testified that she contacted at least 25 compounding pharmacies total. (Doc. 105 at 31). Eighteen were contacted in December 2015. (Id.).

4

##    II.    Analysis

In this action, Price seeks redress for an alleged constitutional deprivation pursuant to 42 U.S.C. § 1983. Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

Price requests that this Court enjoin ADOC from carrying out his execution by lethal injection using its current protocol and further requests that this Court declare that its current protocol is in violation of the Eighth Amendment and is, therefore, unconstitutional. Specifically, Price claims that the use of midazolam hydrochloride as the first drug in Alabama's three-drug lethal injection protocol constitutes cruel and unusual punishment.

In *Glossip v. Gross*, an unsuccessful Eighth Amendment challenge to the same three-drug protocol[8] by death row inmates in Oklahoma, the United States Supreme Court recited and reaffirmed the *Baze* test, and the burden a prisoner must meet to prevail on an Eighth Amendment method-of-execution claim:

> The controlling opinion in *Baze* first concluded that prisoners cannot successfully challenge a method of execution unless they establish that the method presents a risk that is " 'sure or very likely to cause serious illness and needless suffering,' and give rise to 'sufficiently imminent dangers.' " *Id.*, at 50, 128 S. Ct. 1520

---

[8] "Currently, Alabama's lethal injection protocol calls for the administration of: (1) a 500–mg dose of midazolam, (2) followed by a 600–mg dose of rocuronium bromide, and (3) finally, 240 milliequivalents of potassium chloride. This lethal injection protocol involves the same drugs, administered in the same sequence, as the protocol at issue in *Glossip*. 135 S.Ct. at 2734–35." *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1274 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, No. 16-602, 2017 WL 670511 (U.S. Feb. 21, 2017).

> (quoting *Helling v. McKinney*, 509 U. S. 25, 33, 34–35, 113 S. Ct. 2475, 125 L.Ed. 2d 22 (1993)). To prevail on such a claim, "there must be a 'substantial risk of serious harm,' an 'objectively intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively blameless for purposes of the Eighth Amendment.' " 553 U. S., at 50, 128 S. Ct. 1520 (quoting *Farmer v. Brennan*, 511 U. S. 825, 846, and n. 9, 114 S. Ct. 1970, 128 L.Ed. 2d 811 (1994)). The controlling opinion also stated that prisoners "cannot successfully challenge a State's method of execution merely by showing a slightly or marginally safer alternative." 553 U. S., at 51, 128 S. Ct. 1520. Instead, prisoners must identify an alternative that is "feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.*, at 52, 128 S. Ct. 1520.

*Glossip*, 135 S. Ct. at 2737; *see also id.* at 2739 ("*Baze*... addressed the substantive elements of an Eighth Amendment method-of-execution claim, and it made clear that the Eighth Amendment requires a prisoner to plead and prove a known and available alternative. Because petitioners failed to do this, the District Court properly held that they did not establish a likelihood of success on their Eighth Amendment claim."). "As the Supreme Court made abundantly clear in *Glossip* itself, the burden rests with the claimant to 'plead and prove' both prongs of the test." *Brooks v. Warden*, 810 F.3d 812, 819 (11th Cir. 2016), *cert. denied, Brooks v. Dunn*, 136 S. Ct. 979 (2016).

As stated, the trial was limited to evidence on the availability of a suitable alterantive to the current three drug protocol. "To meet his burden of proof on this limited but indispensable element, [Price] must prove by a preponderance of the evidence an alternative method of execution that is feasible [and] readily implemented ..." *Arthur v. Dunn*, 2016 WL 1551475, at *4 (M.D. Ala. Apr. 15, 2016), *appeal dismissed* (July 12, 2016), *aff'd sub nom. Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, No. 16-602, 2017 WL 670511 (U.S. Feb. 21, 2017)(internal citations and quotations omitted). "In other words, [an alternative that] is 'known and available." *Id*. Price contends that his preferred alternative, compounded pentobarbital, is available to the ADOC. While ADOC

acknowledges that compounded pentobarbital is an alternative to midazolam hydrochloride, it disputes that compounded pentobarbital is an alternative that is feasible and readily implemented because pentobarbital (manufactured or compounded) is not available to ADOC.

At trial, Price presented an oral summary of the testimony from Gaylen M. Zentner, Ph.D., an expert in pharmaceutical chemistry, manufacturing, and compounding. Specifically, Zentner testified that it is relatively easy for a compounding pharmacy to compound pentobarbital, a point not contested by Defendants. Price also points out that three other states have been able to obtain pentobarbital from compounding pharmacies and cites the stipulated fact that, in 2016, the states of Georgia, Texas, and Missouri collectively have executed seventeen individuals using a one-drug pentobarbital lethal injection protocol.  Price concludes that he has made a *prima facie* case that pentobarbital is readily available because other states have it and it is easy to compound. The argument continues that ADOC need only: 1) ask the three states with access to pentobarbital to pass along to the suppliers that the ADOC would like to purchase pentobarbital[9] or 2) call the compounding pharmacies currently listed by the United States Food and Drug Administration ("FDA") to find a supplier. (*See* Trial Exhibit 12; list of FDA registered compounding outsourcing facilities).

Hill testified that she contacted four states and 25 pharmacies to no avail.  Price would like for this court to require the ADOC to be more vigilant, as outlined above, in attempting to obtain pentobarbital.  However, Price has not shown that such vigilance would result in success.  And, as the Middle District of Alabama has observed, "[t]hat [pentobarbital] should, could, or may be available falls far short of Plaintiff's burden." *Arthur v. Dunn*, No. 2:11-CV-438-WKW,

---

[9] The ADOC argued, without evidence, that the other states were not likely to be willing to assist ADOC by passing along to their suppliers of pentobarbital that ADOC would like to purchase pentobarbital.  According to ADOC, this unwillingness comes from the states' interest in not "burning" their source, under the theory that the more people who know about the source the greater the risk of public disclosure of the source.  (Doc. 105 at 69-70).

2016 WL 1551475, at *3 (M.D. Ala. Apr. 15, 2016), *appeal dismissed* (July 12, 2016), *aff'd sub nom. Arthur v. Comm'r, Alabama Dep't of Corr.,* 840 F.3d 1268 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, No. 16-602, 2017 WL 670511 (U.S. Feb. 21, 2017).

In *Brooks v. Warden*, the Court of Appeals for the Eleventh Circuit, citing *Glossip*, explained:

> [I]t is not the state's burden to plead and prove that it cannot acquire the drug. As the Supreme Court explained, it is [plaintiff's] burden to "identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." [*Glossip* at 2737.] [Plaintiff] has neither shown a substantial likelihood that there is now a source for pentobarbital that would sell it to the ADOC for use in executions, nor that an execution protocol involving this drug would be readily implementable by the ADOC. Without some showing that pentobarbital is currently "known and available" to the ADOC, there is no substantial likelihood that Brooks could satisfy this prong of the *Glossip* test.

810 F.3d 812, 820 (11th Cir. 2016), *cert. denied sub nom. Brooks v. Dunn*, 136 S. Ct. 979 (2016).[10]

In *Arthur v. Dunn*, another recent challenge to Alabama's use of midazolam hydrochloride, the plaintiff presented substantially the same evidence as that presented in this case. *Arthur v. Comm'r, Alabama Dep't of Corr.*, 840 F.3d 1268, 1302 (11th Cir. 2016), *cert. denied sub nom. Arthur v. Dunn*, No. 16-602, 2017 WL 670511 (U.S. Feb. 21, 2017). As the Court of Appeals for the Eleventh Circuit summarized in *Arthur*,

> The Supreme Court has made unequivocally clear that, in method-of-execution challenges, (1) the district court's factual findings are reviewed under a deferential clear error standard, and (2) the petitioner-inmate bears the burden of persuasion. *Glossip*, 135 S.Ct. at 2739. This includes the requirement that a plaintiff inmate must "plead and prove a known and available alternative." *Id*. at 2738, 2739.

Further, the Court "expressly h[e]ld"

---

[10] The undersigned recognizes the problems faced by counsel for Price in meeting its burden. First, it would not seem feasible that a compounding pharmacy would be willing to disclose to a non-purchaser its willingness to do business with the ADOC. Second, the ethics of counsel assisting the state in its endeavor to lethally inject his client would be questionable. However, the law regarding Price's burden is clear.

> [T]he fact that other states in the past have procured a compounded drug and pharmacies in Alabama have the skills to compound the drug does not make it available to the ADOC for use in lethal injections in executions. The evidentiary burden on [the Plaintiff] is to show that "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Brooks*, 810 F.3d at 820 (emphases added).

*Arthur,* 840 F.3d at 1301-02. Similarly here, Price has not met this burden. In *Arthur*, the Court of Appeals noted, "while four states had recently used compounded pentobarbital in their own execution procedures, the evidence demonstrated that none were willing to give the drug to the ADOC or name their source." The same is true here. The parties have stipulated to the fact that other states have recently obtained and used compounded pentobarbital to carry out executions. However, there is no indication that they would sell it to the ADOC. While Price contends that ADOC could or should have asked other states to "pass along" its request to the states' source(s), in order for that source to reach out to ADOC, it is Price's burden, not the state's to show "there is *now* a source for pentobarbital *that would sell it to the ADOC* for use in executions." *Brooks*, 810 F.3d at 820 (emphases added). He has failed to do so. Similar to the conclusion reached by the Court of Appeals in *Arthur,* this Court finds that "if *Glossip* somehow imposes a good-faith effort on the State, the ADOC made such an effort here by contacting [25] potential sources for the drug, including four other departments of correction and multiple compounding pharmacies." *Arthur,* 840 F.3d at 1303.

Having reviewed and considered the briefs, trial testimony submitted by both parties, and adhering to the legal conclusions set forth by the United States Supreme Court, the Eleventh Circuit, and the Middle District of Alabama, this Court finds that, as a matter of law, Plaintiff has failed to meet his burden of proving that compounded pentobarbital is available to ADOC and, thus, cannot prove an essential element of his Eighth Amendment claim.

### III. Conclusion

In accordance with the foregoing analysis, judgment is entered in Defendants' favor on Price's Eighth Amendment claim, as Price failed to meet his burden of proof at trial.

**DONE** and **ORDERED** this **15th** day of **March 2017.**

/s/ Kristi K. DuBose
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**